UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY GLASPIE,

        Plaintiff,

v.                                                    Case No. 11-10087
                                                      Honorable Patrick J. Duggan

BANK OF AMERICA, N.A. and
TROTT AND TROTT, P.C.,

        Defendants.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT TROTT AND TROTT, P.C.'S MOTION FOR SUMMARY JUDGMENT/DISMISSAL AND (2) DENYING DEFENDANT BANK OF AMERICA, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT

On December 16, 2010, Plaintiff Henry Glaspie filed the current action against

Bank of America, N.A. ("BoA") and Trott & Trott, P.C. ("Trott") (collectively

"Defendants").[1]  Plaintiff is seeking damages and equitable relief for Defendants' alleged

violations of state and federal law arising from the purported modification of a mortgage

agreement securing real property in Oakland County, Michigan.  On May 11, 2011,

Plaintiff filed a First Amended Complaint in which he asserts the following claims against

Defendants: (I) violation of the Michigan Consumer Protection Act ("MCPA"); (II)

violation of the Fair Debt Collections Practices Act ("FDCPA"); (III) violation of

Regulation Z of the Truth in Lending Act ("TILA"); (IV) violation of Michigan's

---

[1]Plaintiff filed his complaint in the Circuit Court for Oakland County, Michigan.  On
January 7, 2011, Defendants removed the complaint to this Court on the basis of 28 U.S.C.
§ 1331.

Mortgage Brokers, Lenders and Servicers Licensing Act ("MBL&SLA"); and (V) breach

of stipulated agreement.  Plaintiff indicates in his amended complaint, however, that he

"voluntarily withdraws" his FDCPA claim (Count II). (*See* Am. Compl. ¶ 32.)

Presently before the Court are Defendants' motions to dismiss or, in the

alternative, for summary judgment, filed pursuant to Federal Rules of Civil Procedure 12

and 56 respectively.[2]  Trott filed its motion on July 29, 2011.  BoA filed its motion on

September 1, 2011.  Plaintiff filed a response to Trott's motion on September 23, 2011,

and a response to BoA's motion on September 29, 2011.[3]  Trott and BoA filed reply

briefs on September 30 and October 13, 2011, respectively.  The Court held a motion

hearing on December 8, 2011.

## I.    Applicable Standards

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure is subject to the same standard of review as a motion to dismiss

brought pursuant to subsection (b)(6) of the rule. *Grindstaff v. Green*, 133 F.3d 416, 421

(6th Cir. 1998).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency

of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

---

[2]Trott seeks dismissal on the pleadings under Rule 12(b)(6), whereas BoA cites Rule 12(c).  As set forth *infra*, however, the same standard of review applies to motions brought pursuant to Rules 12(b)(6) and (c).

[3]Plaintiff sought and received permission from the Court to file his late response to Trott's motion.  Plaintiff did not seek or receive permission to file his response to BoA's motion one week after it was due. The Court nevertheless is considering the arguments set forth in the response.

(6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, – , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the

3

elements of a cause of action, supported by mere conclusory statements, do not suffice."
*Id*. (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-65).

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence
presents a sufficient disagreement to require submission to a jury or whether it is so one-
sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery
and upon motion, Rule 56 mandates summary judgment against a party who fails to
establish the existence of an element essential to that party's case and on which that party
bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.
2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of
material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the
"nonmoving party must come forward with 'specific facts showing that there is a genuine
issue for trial.'"  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,
106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine
issue, the nonmoving party must present sufficient evidence upon which a jury could
reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*,
477 U.S. at 252, 106 S. Ct. at 2512.  The court must accept as true the non-movant's
evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255,

4

106 S. Ct. at 2513.

## II.     Factual and Procedural Background

Plaintiff owns real property in Southfield, Michigan (the "Property").  On November 15, 2004, as part of a loan refinance transaction, Quicken Loans, Inc. loaned Plaintiff $160,000.00.  In order to secure the note, Plaintiff and his wife granted a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS").  On January 7, 2010, MERS assigned the mortgage to BAC Home Loan Servicing, L.P. ("BAC"), which merged into BoA effective July 1, 2011.

Plaintiff fell behind on his mortgage payments and BAC\BoA, as the current servicer of the loan, eventually retained Trott to handle potential foreclosure proceedings. On February 4, 2010, Trott notified Plaintiff that foreclosure proceedings with respect to the Property had been started, but that he had several alternative options to avoid foreclosure.  (Am. Compl. Ex. A.)  Plaintiff responded that he was interested in the alternative options.  (*Id*.)  In mid-March 2010, Trott contacted Plaintiff and provided him with three payment options to bring his loan payments current.  Plaintiff chose the option that required him to make an initial payment of $8,300.00, followed by monthly payments of approximately $2,150.00 over the next six months until the arrearage was completely paid.

On March 29, 2010, Plaintiff signed a Stipulated Agreement incorporating this option.  (Am. Compl. Ex. F.)  On the same date, he met with two representatives from Trott and tendered a cashier's check in the amount of $8,300.00.  Plaintiff alleges that one

5

of the representatives, "Kim B", told him "that future payments should be sent directly to [BoA]" but that Plaintiff "should not make any payments until a coupon booklet from BoA was sent to his house."  (Am. Compl. ¶ 15.)

BoA subsequently cashed the cashier's check for $8,300.  Plaintiff did not make the monthly payments required under the Stipulated Agreement in April and May because, he claims, he still had not received a coupon booklet.  (Am. Compl. ¶ 16.) Plaintiff contacted Trott in June and was informed that he should have been making payments despite not receiving a coupon booklet.  Plaintiff then sent BoA two cashier's checks, each in the amount of $2,102.53.  (*Id*. Ex. C.)  One of the checks was dated June 11, 2010; the other check was dated June 26, 2010.  (*Id*.)

In early July 2010, BoA contacted Plaintiff and informed him that foreclosure proceedings had been initiated against the Property.  When Plaintiff inquired about the two payments he made in June, he was told that BoA had no record of the payments.  In fact, both payments were returned to Plaintiff in July 2010.  Plaintiff received a notice from BoA dated August 4, 2010, stating that he was eleven months past due on his mortgage payments and owed $11,001.63 after applying his payment of $8,300.00.  (*Id*. Ex. D.)  Plaintiff asserts in his First Amended Complaint that this statement constituted a fraudulent misrepresentation.  (Am. Compl. ¶ 22.) Plaintiff further asserts that, at this time, BoA agreed to reinstate the loan if Plaintiff paid $6,400.00.  (*Id*.)  He alleges that, although he agreed to make this payment once a document reflecting BoA's offer was sent to him, he never received such a document.  (*Id*. ¶ 23.)

6

On September 21, 2010, BoA informed Plaintiff (through his attorney) that the Property was in foreclosure.  As set forth earlier, Plaintiff thereafter initiated this action and Defendants filed the pending motions to dismiss and/or for summary judgment.  In response to Defendants' motions, Plaintiff has withdrawn all but his MBL&SLA claim against Trott and BoA and his breach of contract claim against BoA.  (*See* Doc. 40 at 5; Doc. 42 at 5.)

### III.   Analysis

#### A.   Plaintiff's Remaining Claim Against Trott

As indicated above, Plaintiff has withdrawn all of his claims against Trott, except Count IV of his First Amended Complaint in which he alleges a violation of the MBL&SLA.  Trott seeks dismissal of this claim, contending that it is not an entity covered by or required to be licensed under the statute.  Plaintiff argues in response that Trott was required to obtain a license under the act because Trott was retained as BoA's attorney to conduct a mortgage foreclosure and therefore was acting as BoA's agent. (Pl.'s Resp. Br. [Doc. 40] at 7.)  There is no question, Plaintiff continues, that BoA is a mortgage broker required to be licensed under the MBL&SLA.  (*Id.*)

The defect in Plaintiff's argument however– as Trott points out in its reply brief– is that it overlooks section 25 of the statute.  Section 25 provides in pertinent part:

This act does not apply to any of the following:

. . .

(j) An individual licensed to practice law in this state and not engaged in the

7

business of negotiating loans secured by real property, if the individual
renders services in the course of his or her practice as an attorney-at-law.

Mich. Comp. Laws § 445.1675.  At the motion hearing, Plaintiff's counsel argued that the

exemption does not apply because the claim is premised on a statement by "Kim B" who

is a loss mitigation specialist for Trott and not an attorney.  Plaintiff is suing Trott,

however, presumably on the premise that Kim B acted as its agent.  As such, the Court

believes that the exemption still applies.

Thus the Court concludes that the MBL&SLA does not apply to Trott, and

Plaintiff's claim against Trott for violation of the statute must be dismissed.

### B.      Plaintiff's Claims Against BoA

Plaintiff continues to pursue his MBL&SLA and breach of contract claims against

BoA.  For the reasons stated on the record, the Court is denying BoA's motion to dismiss

and for summary judgment with respect to these claims.

## IV.    Conclusion

Plaintiff alleges five counts against Defendants in his First Amended Complaint.

"Concur[ring] with [Defendants'] position[s]" in their motions to dismiss or for summary

judgment, Plaintiff has abandoned all but two of those counts: his Michigan Mortgage

Brokers, Lenders and Servicers Licensing Act claim (Count IV) and his breach of

contract claim against BoA, only (Count V).  For the reasons set forth above, the Court

concludes that Count IV must be dismissed as to Trott, only.  BoA is not entitled to

dismissal or summary judgment with respect to the claims remaining against it.

Accordingly,

**IT IS ORDERED**, that Defendant Trott & Trott, P.C.'s motion for summary

judgment/dismissal is **GRANTED**;

**IT IS FURTHER ORDERED**, that Defendant Bank of America, N.A.'s motion

for judgment on the pleadings and for summary judgment is **DENIED**;

**IT IS FURTHER ORDERED**, that pursuant to Plaintiff's stipulation, Counts I-III

of the First Amended Complaint are **DISMISSED WITH PREJUDICE**.

Dated:December 15, 2011                    s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
Daniel C. Flint, Esq.
Richard Welke, Esq.
Mark E. Plaza, Esq.
Courtney D. Roschek, Esq.